**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBERT FRIEDLAND,        :
                     :     Civil Action No. 06-2583 (RMB)
          Plaintiff,   :
                     :
          v.           :    **OPINION**
                     :
MR. HAYMAN, et al.,     :
                     :
          Defendants.  :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Robert Friedland
Mid-State Correctional Facility
P.O. Box 866, Range Road
Wrightstown, NJ 08562

**BUMB**, District Judge

    Plaintiff Robert Friedland, a prisoner confined at Mid-State Correctional Facility in Wrightstown, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to

28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.[1]

At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.

From September 2004 until March 2006, Plaintiff was confined at Monmouth County Correctional Institution ("MCCI").  Plaintiff alleges that, while there, defendants Warden Fraser and Officer Kudrick permitted Plaintiff to be beaten by gang members, allowed his property to be stolen, and refused to provide appropriate medical treatment.  Plaintiff also alleges that Defendants Fraser and Officer Kudrick allowed Plaintiff to be falsely charged with disciplinary actions to cover up the beating.  Finally, Plaintiff alleges that Defendant Fraser agreed to a settlement regarding the stolen property and then refused to transfer the agreed-upon funds into Plaintiff's account.

---

[1] Plaintiff has filed a Motion [5] to Amend Complaint.  This Court will grant the Motion and deem the Amended Complaint filed.

Plaintiff alleges that the Board of Chosen Freeholders was aware, in advance, of his request to be transferred because of threats, that the Board failed to protect him from being beaten, and that the Board was aware that medical treatment was not provided and that Plaintiff's property was taken.

Sometime after the beating at MCCI, Plaintiff was transferred to Mid-State Correctional Facility.  Plaintiff alleges that Defendants Acting Commissioner Mr. Hayman and Mid-State Correctional Facility Administrator John Robertshaw have violated his Eighth Amendment right to be protected from other inmates by knowingly transferring him to a facility where he is in danger of being beaten by members of the same gang who beat him at MCCI.  Plaintiff alleges that both Acting Commissioner Hayman and Administrator Robertshaw have refused to provide him with appropriate medical treatment for the injuries he received as a result of the beating at MCCI.  Plaintiff alleges that Acting Commissioner Hayman knowingly permitted false disciplinary charges to be issued against Plaintiff and that he allowed the New Jersey State Parole Board to deny him jail credits. Plaintiff alleges that Administrator Robertshaw has denied him the "status" which would permit him to apply to participate in the Community Release Program and has required him to live in substandard and dangerous conditions.

Plaintiff alleges that Defendant Hearing Officer Mr. Crippen failed to schedule a timely parole hearing, knowingly used incorrect information to deny him parole, and incorrectly calculated his jail credits and release date.  Plaintiff alleges that Defendant New Jersey State Parole Board Chairman John D'Amico failed to schedule a timely parole hearing, knowingly provided incorrect information, failed to perform the required review, and knowingly and improperly denied jail credits thus preventing Plaintiff's release.

Plaintiff seeks injunctive relief and monetary damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all

4

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

5

pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg</u>
<u>County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of <u>respondeat</u> <u>superior</u>.  <u>See</u> <u>City of</u>
<u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.</u>
<u>New York City Department of Social Services</u>, 436 U.S. 658, 690-

6

91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the plaintiff's injury.

Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion)). A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law." [Bd. of County Comm'rs of Bryan
> County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a
> government employee may be deemed to be the result of a
> policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity liable
> under § 1983. The first is where "the appropriate
> officer or entity promulgates a generally applicable
> statement of policy and the subsequent act complained
> of is simply an implementation of that policy." The
> second occurs where "no rule has been announced as
> policy but federal law has been violated by an act of
> the policymaker itself." Finally, a policy or custom
> may also exist where "the policymaker has failed to act
> affirmatively at all, [though] the need to take some
> action to control the agents of the government 'is so
> obvious, and the inadequacy of existing practice so
> likely to result in the violation of constitutional
> rights, that the policymaker can reasonably be said to
> have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or

her official capacity "generally represent[s] only another way of

pleading an action against an entity of which an officer is an

agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-

capacity action, ... a governmental entity is liable under § 1983

only when the entity itself is a 'moving force' behind the

8

deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).


IV.   <u>ANALYSIS</u>

A.   <u>Eighth Amendment Failure-to-Protect Claims</u>

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.   <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-46 (1981).

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994); <u>Young v. Quinlan</u>, 960 F.2d 351, 364 (3d Cir. 1992).   Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." <u>Farmer</u>, 511 U.S. at 833 (1994) (internal quotations omitted).   "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" <u>Id.</u> at 834 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due

10

care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  <u>Farmer</u>, 511 U.S. at 834.

Applying <u>Farmer</u> to the instant action, the first question is whether Plaintiff has alleged facts showing that he faced a substantial risk of assault.  The second question is whether Plaintiff has alleged facts from which it could be inferred that defendants were aware of and disregarded that risk.

In this case, Plaintiff contends that Officer Kudrick, Warden Fraser, and the Board of Chosen Freeholders were aware, in advance, of threats to Plaintiff, that they refused to protect him, and that he was beaten by gang members.  These allegations state an Eighth Amendment failure-to-protect claim sufficient to withstand dismissal at this stage of the proceeding.

Plaintiff also contends that Acting Commissioner Hayman and Administrator John Robertshaw are aware of the circumstances surrounding the beating and, nevertheless, have transferred him to Mid-State Correctional Facility where members of the same gang, and perhaps those who previously beat him, are confined. Although the factual allegations of this claim are slim, they are sufficient to avoid dismissal at this early stage of the litigation.

B.   <u>Eighth Amendment Medical Care Claims</u>

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with

11

adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  <u>Id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

The second element of the <u>Estelle</u> test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  <u>Farmer v.</u>

12

_Brennan_, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  _Andrews v. Camden County_, 95 F.Supp.2d 217, 228 (D.N.J. 2000); _Peterson v. Davis_, 551 F.Supp. 137, 145 (D. Md. 1982), _aff'd_, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  _White v. Napoleon_, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  _Inmates of Allegheny County Jail v. Pierce_, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  _Estelle_, 429 U.S. at 105-06; _White_, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ...

13

intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted). Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Here, Plaintiff alleges that various defendants have refused to provide medical care for injuries he sustained following his

14

beating at MCCI.  Plaintiff fails, however, to describe those injuries at all.  Accordingly, Plaintiff has failed to allege a serious medical need and this claim will be dismissed.

C.   Deprivation of Property Claims

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986).  In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees.  See

New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 <u>et seq.</u> (2001).  Plaintiff has alleged no facts suggesting that the defendants deprived him of property pursuant to an established state procedure.  To the contrary, established state procedures require prison officials to preserve personal property of inmates.  <u>See</u>, <u>e.g.</u>, N.J. Admin. Code §§ 10A:1-11.1 <u>et. seq.</u> (2001).

Thus, Plaintiff cannot state a claim for deprivation of property without due process.  In addition, any claim that Warden Fraser has refused to fulfill a settlement agreement suggests a state-law contracts claim enforceable in state court rather than a federal constitutional claim.  It does not appear that amendment could cure the deficiencies in Plaintiff's deprivation of property claim.  Accordingly, it must be dismissed with prejudice.

D.   <u>False Disciplinary Charges</u>

Plaintiff also fails to state a claim based upon the alleged filing of false disciplinary charges to cover up the circumstances surrounding the beating at MCCI.

"[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." <u>Smith v. Mensinger</u>, 293 F.3d 641 (3d Cir. 2002) (citing <u>Freeman v. Rideout</u>, 808 F.2d 949, 952-53 (2d Cir. 1986) (holding that

"the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988)).  See also Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation).  See also Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided").

In Wolff v. McDonnell, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.

However, inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. Id. at 567-68. See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young v. Kann, 926 F.2d 1396, 1404 (3d Cir. 1991); Sanchez v. Roth, 891 F. Supp. 452, 458-59 (N.D.Ill.1995); Harrison v. Pyle, 612 F. Supp. 850, 854-55 (D. Nev. 1985).

Here, Plaintiff does not allege that he was not afforded the procedures required by Wolff. Accordingly, he has failed to set forth a claim for a procedural due process violation arising out of the filing of false disciplinary charges.[2]

E.   "Status" Claim

Plaintiff contends that Defendant Administrator Robertshaw has denied Plaintiff the "status" that would permit him to be eligible for placement in a Community Release Program.

Under the regulations of the Department of Corrections, inmates must meet certain eligibility criteria in order to participate in a Residential Community Release Agreement Program. N.J.A.C. 10A:20-4.4.

---

[2] It is not clear from the Complaint whether Plaintiff is alleging that he was deprived of good time credits as a result of the disciplinary proceeding. To the extent that Plaintiff complains of a loss of good time credits, his remedy is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 following exhaustion of state remedies. See Edwards v. Balisok, 520 U.S. 641 (1997); Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002) (citing Sandin v. Conner, 515 U.S. 472, 486 (1995)); Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

To qualify for admission to a RCRAP, the inmate must be classified by the [Institutional Classification Committee] as "full minimum."  The inmate must have a psychological evaluation which addresses "the inmate's readiness and ability to adequately adapt to the pressures and responsibilities of living outside the correctional facility."  The inmate also must have a satisfactory "overall correctional facility adjustment and be seen as not likely to pose a threat to the safety of the community."  In addition, a candidate for halfway house placement must be within 18 months of (1) an established parole date, (2) expiration of the maximum sentence, (3) an actual parole eligibility date or (4) an anticipated parole date.

Shabazz v. New Jersey Department of Corrections, 385 N.J. Super. 117, 124-25 (App. Div. 2006) (citations omitted).

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or enacted law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990) (prisoner possesses liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S.

19

480, 493-94 (1980) (prisoner possesses liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).

20

Here, both the Court of Appeals for the Third Circuit and
the Superior Court of New Jersey, Appellate Division, have held
that New Jersey inmates have no liberty interest in remaining in
a halfway house under the Residential Community Release Agreement
Program.  See Asquith, 186 F.3d at 411; Shabazz, 385 N.J. Super.
at 124-28.  Accordingly, Plaintiff fails to state a claim for a
constitutional violation arising out of his classification in a
status that precludes his participation in the RCRAP.

F.    Eighth Amendment Conditions Claims

The Eighth Amendment proscription against cruel and unusual
punishments is violated by the "unnecessary and wanton infliction
of pain contrary to contemporary standards of decency."  Helling
v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that
"the treatment a prisoner receives in prison and the conditions
under which he is confined are subject to scrutiny under the
Eighth Amendment."  Id. at 31.

As noted above, to state a claim under the Eighth Amendment,
an inmate must allege both an objective and a subjective
component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The
objective component mandates that "only those deprivations
denying 'the minimal civilized measure of life's necessities' ...
are sufficiently grave to form the basis of an Eighth Amendment
violation."  Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes,
452 U.S. at 346).  This component requires that the deprivation

21

sustained by a prisoner be sufficiently serious, for only
"extreme deprivations" are sufficient to make out an Eighth
Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have
acted with "deliberate indifference," a state of mind equivalent
to a reckless disregard of a known risk of harm.  See Farmer v.
Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a
conditions-of-confinement claim if he can show that the
conditions alleged, either alone or in combination, deprive him
of "the minimal civilized measure of life's necessities," such as
adequate food, clothing, shelter, sanitation, medical care, and
personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan,
960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth
Amendment directs that convicted prisoners not be subjected to
cruel and unusual punishment, "the Constitution does not mandate
comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent
that certain conditions are only "restrictive" or "harsh," they
are merely part of the penalty that criminal offenders pay for
their offenses against society.  Id. at 347.  An inmate may
fulfill the subjective element of such a claim by demonstrating
that prison officials knew of such substandard conditions and
"acted or failed to act with deliberate indifference to a

22

substantial risk of harm to inmate health or safety." <u>Ingalls v. Florio</u>, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff alleges in conclusory terms only that he is "housed in substandard and dangerous living conditions." Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a plaintiff "need not plead facts," so long as the complaint meets the notice pleading requirements of Rule 8, <u>see</u> <u>Alston v. Parker</u>, 363 F.3d 229, 233-34 and n.6 (3d Cir. 2004), a complaint must plead facts sufficient at least to "suggest" a basis for liability, <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004) (clarifying <u>Alston</u>). With respect to his allegation of unconstitutional conditions of confinement, Plaintiff fails to meet this notice pleading requirement. Accordingly, this claim will be dismissed without prejudice.

G.   <u>Parole Hearing Claims</u>

There is no federal constitutional right to parole or to an error-free parole decision-making process; states, however, may create a parole entitlement protected by the Due Process Clause. <u>See</u> <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979). <u>See also</u> <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987); <u>Prevard v. Fauver</u>, 47 F.Supp.2d 539, 545 (D.N.J.), <u>aff'd</u>, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See <u>Williams v. New Jersey State Parole Board</u>, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), <u>aff'd</u>, 975 F.2d 1553 (3d Cir. 1992); <u>New Jersey State Parole Board v. Byrne</u>, 93 N.J. 192, 203 (1983).  Judge Lifland of this Court has held that these cases remain good law even after taking into account the rule announced by the Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See <u>Watson v. DiSabato</u>, 933 F.Supp. 390, 392-93 (D.N.J. 1996) (prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

Prisoners may utilize § 1983 to challenge the constitutionality of parole procedures in actions seeking declaratory and injunctive relief.  See <u>Wilkinson v. Dotson</u>, 544 U.S. 74 (2005).

The question remains what process is due.  The Supreme Court of New Jersey has stated that

> Only a few basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context.  We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons.  No hearing, confrontation, or counsel issues are implicated here.

Byrne, 93 N.J. at 211.

Similarly, Judge Thompson of this Court has held that due process does not require that a hearing be held in exact accordance with the time period specified by the applicable New Jersey statutes.  See Burgos v. New Jersey State Parole Board, 2000 WL 33722126, *8 (D.N.J. Aug. 7, 2000).  In addition, while delay for an extended period of time may violate a prisoner's due process rights, "procedural errors are generally cured by holding a new hearing in compliance with due process requirements."  Id. at *8-9.  See also Johnson v. Paparozzi, 219 F.Supp.2d 635, 642 (D.N.J. 2002).

This is not to say that every allegation of constitutional violations in parole proceedings is the proper subject for an action under § 1983.  In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser, state prisoners

who had been deprived of good-conduct-time credits by the New
York State Department of Correctional Services as a result of
disciplinary proceedings brought a § 1983 action seeking
injunctive relief to compel restoration of the credits, which
would have resulted in their immediate release.  411 U.S. at 476.
The prisoners did not seek compensatory damages for the loss of
their credits.  411 U.S. at 494.  The Court held that "when a
state prisoner is challenging the very fact or duration of his
physical imprisonment, and the relief he seeks is a determination
that he is entitled to immediate release or a speedier release
from that imprisonment, his sole federal remedy is a writ of
habeas corpus."  Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court
addressed a corollary question to that presented in Preiser,
whether a prisoner could challenge the constitutionality of his
conviction in a suit for damages only under § 1983, a form of
relief not available through a habeas corpus proceeding.  Again,
the Court rejected § 1983 as a vehicle to challenge the
lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages

26

> bearing that relationship to a conviction or sentence
> that has <u>not</u> been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further

instructed district courts, in determining whether a complaint

states a claim under § 1983, to evaluate whether a favorable

outcome would necessarily imply the invalidity of a criminal

judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will <u>not</u> demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that

"a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  <u>Id.</u> at 489-90.

More recently, in <u>Edwards v. Balisok</u>, 510 U.S. 641 (1997),

the Supreme Court applied the lessons of <u>Preiser</u> and <u>Heck</u> to a

state prisoner action, seeking compensatory and punitive damages,

challenging the constitutionality of procedures used in a prison

disciplinary proceeding that resulted in the loss of good-time

credits, but not necessarily challenging the result and not

seeking the restoration of the good-time credits.  Again, the

27

Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment.  520 U.S. at 646-8.

Thus, for example, when a dispute "goes <u>only</u> to the manner in which the Board has considered plaintiff's parole, and [when] plaintiff does not claim that the review process must actually lead to his parole or to an earlier parole eligibility date, plaintiff's claim may proceed under 42 U.S.C. § 1983." <u>Johnson v. Fauver</u>, 786 F.Supp. 442, 445 (D.N.J.) (emphasis added), <u>aff'd</u>, 970 F.2d 899 (3d Cir. 1992); <u>see also</u> <u>Georgevich v. Strauss</u>, 772 F.2d 1078, 1086 (3d Cir. 1985), <u>cert. denied</u>, 475 U.S. 1028 (1986) (suit properly brought under § 1983 when it sought <u>only</u> the equal application of statutory furlough eligibility criteria, not plaintiff's release from incarceration); <u>Salaam v. Consovoy</u>, No. 99-cv-5692, 2000 WL 33679670, *2 (D.N.J. April 14, 2000) (a claim properly may be brought as a § 1983 action when the plaintiff is neither seeking an earlier parole eligibility date, nor challenging the parole board's calculation of his eligibility date).

Here, Plaintiff alleges that he received a late hearing, that Mr. Crippen and Mr. D'Amico knowingly denied parole based upon false information, and that Mr. Crippen and Mr. D'Amico incorrectly calculated his jail credits causing him to be held

"illegally as the time was served."  To the extent Plaintiff challenges the late parole hearing, he fails to state a claim, as he also alleges that he did eventually receive the hearing and that parole was denied.  It does not appear that Plaintiff is challenging general parole procedures.  To the extent Plaintiff challenges the denial of parole based upon deliberate use of false information or the miscalculation of his jail credits, he alleges also that he should be released, and the claim is properly the subject of a petition for writ of habeas corpus, not an action under § 1983.  <u>See</u> <u>Benson v. New Jersey State Parole Board</u>, 947 F.Supp. 827 (D.N.J. 1996).  No § 1983 action will accrue until such time as the parole decision has been invalidated through a habeas or other appropriate action.  <u>See</u> <u>Heck</u>, 512 U.S. at 489-90.[3]

---

[3] Plaintiff also alleges that Mr. John D'Amico has failed to review the denial of parole.  To the extent the Amended Complaint could be construed as alleging that Mr. D'Amico's inaction rises to the level of a due process deprivation, this Court finds that administrative and judicial procedures in place in New Jersey provide all the process necessary for appropriate review of parole denial decisions.  Specifically, any denial of parole by an Adult Panel is appealable to the Parole Board, provided certain conditions are met.  N.J. Admin. Code Title 10 Sec. 71-4.2.  In addition, New Jersey law provides an absolute right to appeal any action or decision of a State administrative agency to the Superior Court, Appellate Division, both under the State Constitution, N.J. Const. Art. VI, Sec. 5, para. 4; <u>Trantino v. New Jersey State Parole Board</u>, 166 N.J. 113, 172 (N.J.), <u>modified on other grounds</u>, 167 N.J. 619 (2001), and under the New Jersey Court Rules, Pressler, <u>Current New Jersey Court Rules</u>, Rule 2:2-3(a)(2) (2001).  This exclusive procedure encompasses appeals from "inaction as well as action of a State administrative agency."  <u>Trantino v. New Jersey State Parole Board</u>, 296 N.J.

In addition, to the extent the Amended Complaint could be construed as asserting a claim that Plaintiff has a due process right to have false information expunged from his parole file, cf. Paine v. Baker, 595 F.2d 197 (4th Cir.), cert. denied, 444 U.S. 925 (1979), the Court of Appeals for the Third Circuit has never recognized such a cause of action, see Williams v. Federal Bureau of Prisons, 85 Fed.Appx. 299, 304, 2004 WL 507779, **4 (3d Cir. 2004) (unpubl.), and it is not clear that the Paine case remains good law even in the Fourth Circuit, see Johnson v. Rodriquez, 110 F.3d 299, 309 n.13 (5th Cir.), cert. denied, 522 U.S. 995 (1997).  In any event, such a claim goes beyond the limited due process protections recognized as due to New Jersey inmates seeking parole.

---

Super. 437, 459-460 (App. Div. 1997), modified on other grounds and affirmed, 154 N.J. 19 (1998); Johnson v. State Parole Board, 131 N.J. Super. 513, 517-18 (App. Div. 1974), certif. denied, 67 N.J. 94 (1975).  See also Petrucelli v. Department of Civil Service, 28 N.J. Super. 572, 575 (App. Div. 1953) ("The import of the rule embraces official administrative conduct of a negative character as well, such as, for example, the refusal to consider a meritorious petition, or to conduct a hearing, or to render any decision in a controversial cause appropriately before the [agency].").

Moreover, if a New Jersey agency fails or declines to consider an administrative appeal from a decision of a lower agency official, the decision sought to be appealed is deemed the agency's final decision for purposes of any subsequent appeal to the state appellate courts.  See, e.g., New Jersey State Parole Board v. Cestari, 224 N.J. Super. 534, 542 n.2 (App. Div.), certif. denied, 111 N.J. 649 (1988) (where the full Parole Board declines to consider an administrative appeal from an Adult Panel of the Board, "the decision of the Adult Panel is the final decision of the agency").

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Eighth Amendment failure-to-protect claim will be permitted to proceed as against Warden Fraser, Officer Kudrick, the Board of Chosen Freeholders, Acting Commissioner Mr. Hayman, and Administrator John Robertshaw; the deprivation-of-property claim will be dismissed with prejudice, and all other claims will be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies of his Amended Complaint, the Court will grant Plaintiff leave to file a second amended complaint.[4]  An appropriate order follows.


<u>s/Renée Marie Bumb</u>
Renée Marie Bumb
United States District Judge

Dated:<u> November 16, 2006</u>

_____

[4] Plaintiff should note that when a second amended complaint is filed, the original complaint and first amended complaint no longer perform any function in the case and "cannot be utilized to cure defects in the [second] amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file a second amended complaint that is complete in itself.  <u>Id.</u>